UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BROOKE RENEE PRATER,

      Plaintiff,                       Case No. 2:20-cv-10543
                                     District Judge Victoria A. Roberts
v.                                 Magistrate Judge Kimberly G. Altman

ANDREW SAUL, COMMISSIONER
OF SOCIAL SECURITY,

      Defendant.

_____/

## REPORT AND RECOMMENDTION ON CROSS MOTIONS FOR SUMMARY JUDGMENT

### I.     Introduction

This is a social security case.  Plaintiff Brooke Renee Prater brings this action under 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (ECF Nos. 13, 14), which have been referred to the undersigned for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B).

For the reasons set forth below, substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Prater is not disabled under

1

the Act.  Accordingly, it is RECOMMENDED that the Commissioner's Motion for Summary Judgment (ECF No. 14) be GRANTED, Prater's Motion for Summary Judgment (ECF No. 13) be DENIED, and that under sentence four of 42 U.S.C. § 405(g), the ALJ's decision be AFFIRMED.

## II.     Background

### A.     Procedural History

Prater was 33 years old at the time of her alleged onset date of March 1, 2014.  (ECF No. 11, Tr. 140).  She completed high school and had prior work experience as a cashier and janitor.  (*Id*., Tr. 144).  She alleged disability due to bipolar I disorder, type I diabetes, asthma, psychotic episodes, suicide attempts, Lyme's disease, stomach ulcers, GERD, and carpal tunnel syndrome.  (*Id*., Tr. 143).

After Prater's DIB application was denied at the initial level on April 18, 2017 (*Id*., Tr. 56-63), she timely requested an administrative hearing, which was held on January 23, 2019, before the ALJ.  (*Id*., Tr. 29-45).  Prater testified at the hearing, as did a vocational expert ("VE").  (*Id*.).  On February 20, 2019, the ALJ issued a written decision finding that Prater was not disabled from her date of filing to her date last insured, September 30, 2015.  (*Id*., Tr. 12-28).  On January 15, 2020, the Appeals Council denied review, making the ALJ's decision the final

2

decision of the Commissioner.  (*Id.*, Tr. 1-6).  Prater timely filed for judicial review of the final decision.  (ECF No. 1).

## B.     Medical Evidence

The medical record reflects that Prater had been treated by various mental health therapists at Triad Counseling Centers ("Triad") beginning in 2004.  (ECF No. 11, Tr. 359, 362).  The earliest record contained in the transcript, from May 13, 2014, noted that upon her last intake she had severe levels of poor concentration, restlessness, and worrying; moderate-to-severe levels of impulsivity, substance abuse, sleep disturbance, indecisiveness, mood swings, and helplessness; and moderate levels of irritability, low self-esteem, depressed mood, oppositional [functioning], violation of rules, and low motivation.[1]  (*Id.*, Tr. 215).  By this session, some of her levels in these areas had changed: her concentration, restlessness, and worrying had improved; and no issues were reported with substance abuse, sleep disturbance, indecisiveness, mood swings, helplessness, oppositional [functioning], rule violating, or low motivation; but Prater had new issues with a moderate decrease in energy, moderate eating disturbances, and moderate-to-severe anxiety.  (*Id.*).  Her irritability had worsened, and her impulsivity, low self-esteem, and depressed mood were unchanged.  (*Id.*).  Taking

---

[1] Levels were measured on a scale of one through five, with one being "mild," three being "moderate," and five being "severe." *See, e.g.,* Tr. 215.

3

these changes into account, her therapist wrote that "minimal to moderate progress" had been made over the duration of treatment, that Prater had an "increased ability to cope with life's challenges," and that she had "maintained sobriety from alcohol [for] over one year." (*Id*.). Her Global Assessment of Functioning ("GAF") score with initially rated at 53, but by this session had improved to 62.[2] (*Id*.).

A week later, Prater returned to Triad, reporting increased volatility and suspiciousness, feeling overwhelmed, and realizing that she needs to go back on medication. (ECF No. 11, Tr. 214). Prater attended therapy sessions at Triad throughout the rest of 2014, generally returning every two weeks. Her aforementioned mental health issues quickly improved to a moderate level, (*id*.), and by July 10, 2014, many had reduced to a mild-to-moderate level (a two out of five). (*Id*., Tr. 208). At that session, Prater reported "a few suspicious thoughts"

---

[2] "The GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning." *Norris v. Comm'r of Soc. Sec.*, No. 11–5424, 461 F. App'x 433, 436 n. 1 (6th Cir. 2012) (citations omitted). In contrast, a GAF score of 61-70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, p. 32 (4th ed. 1994) (emphasis omitted).

but nothing "extreme." (*Id.*).  In August 2014, Prater reported her mood being more stable, with her stress level improving since being off of work. (*Id.*, Tr. 227). Her GAF score at that time was 57. (*Id.*).  In November 2014, Prater reported that things were well. (*Id.*, Tr. 218).  She continued treatment in 2015, noting in February that she was "doing better," but that "earlier in the quarter she had some issues with paranoia." (*Id.*, Tr. 244).  Her GAF score at that time was 59. (*Id.*). Prater suffered a miscarriage in April, and in May her GAF score had decreased to 57, but she was able to start taking medications that she had stopped due to the pregnancy. (*Id.*, Tr. 237).  Throughout these sessions, her progress had been reported to be "minimal," and in May 2015 her progress regressed. (*Id.*, Tr. 236). But in July 2015 she was making "moderate" progress toward her goals, as she'd had "a good two weeks" and was "doing well." (*Id.*, Tr. 233).  By September 2015, all of Prater's symptoms were rated at either a one (mild) or two (between mild and moderate) out of five. (*Id.*, Tr. 304).

Following an apparent gap in her treatment, Prater was next seen at Triad in May 2016. (ECF No. 11, Tr. 302).  She had given birth six days prior to the session, noted an increase in paranoia, and knew that she needed to go back on her medication. (*Id.*).  Her irritability, worrying, mood swings, and depressed mood were rated as moderate, and she had moderate-to-severe paranoia, all representing increases in severity in these states. (*Id.*).  Her progress had once again regressed.

5

(*Id*.).  Subsequently, she had an improved mood, some suspicious periods, and an increase in worrying.  (*Id*., Tr. 300).

In December 2017, a document entitled "Mental Capacities Evaluation Medical Assessment" ("Evaluation") was prepared by Triad.  (ECF No. 11, Tr. 352-356).  Though the ALJ accurately described the Evaluation as undated and unsigned, the Court assumes for purposes of these motions that the form report was authored by treating psychologist Sharon Ruth Nassar, Ph.D.[3]  According to the Evaluation, Prater had moderate difficulties in maintaining social functions and moderate restrictions of activities of daily living.  (*Id*., Tr. 352).  She had moderately-severe deficiencies in concentration, persistence, or pace; a moderately-severe degree of repeated episodes of deterioration or decompensation; and moderately-severe limitations in the following: understanding, carrying out, and remembering simple instructions, sustaining concentration and attention, using judgment, responding to time limits, performing work in regular contact with others, relating appropriately to supervisors and co-workers, relating appropriately to the public, responding appropriately to changes in a routine work situation, making simple work-related decisions, performing activities within a schedule,

---

[3] *Cf.* ECF No. 11, Tr. 214 (treatment notes from May 19, 2014, signed by Dr. Nassar as "therapist (coordinator of services)" and again as "clinical psychologist,") ECF No. 11, Tr. 356 (last page of the Evaluation, noting the author's medical specialty as "clinical psychology" and the date of first examination as May 19, 2014).

maintaining regular attendance and punctuality, and responding appropriately to supervision. (*Id*., Tr. 352-356). Prater had moderate limitations in performing simple and routine, repetitive tasks, maintaining socially appropriate behavior, adherence to basic standards of neatness and cleanliness, and responding appropriately to usual work situations. (*Id*., Tr. 353-355). She had severe limitations in responding to customary work pressures and maintaining production standards. (*Id*., Tr. 355). Significantly, the level of limitations in these areas was circled from a list of options on the Evaluation, and no elaboration or explanation on these findings was given. Prater's diagnosis was Bipolar I Disorder in partial remission and her prognosis was fair. (*Id*., Tr. 356).

### III. Framework for Disability Determinations (the Five Steps)

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, No. 08-10279, 2008 WL 4793424, at *4 (E.D. Mich. Oct. 31, 2008), citing 20 C.F.R. § 404.1520; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps.... If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Prater was not disabled under the Act. At Step One, the ALJ found that Prater had not

8

engaged in substantial gainful activity between March 1, 2014 (the alleged onset date) and September 30, 2015 (the date last insured).  (ECF No. 11, Tr. 17).  At Step Two, the ALJ found that she had the severe impairments of diabetes mellitus, type I; depression; and bipolar disorder.  (*Id.*).  At Step Three, the ALJ found that Prater's impairments, whether considered alone or in combination, did not meet or medically equal a listed impairment.  (*Id.*, Tr. 18).

The ALJ then assessed Prater's residual functional capacity ("RFC"), concluding that she was capable of performing light work, with the following additional limitations:

> [S]he should never climb ladders, scaffolds, or ropes.  She can occasionally stoop, kneel, crouch, crawl, or balance.  She must avoid concentrated exposure to hazards including dangerous and unprotected machinery or heights, pulmonary irritants, and vibrations.  The claimant is limited to unskilled work meaning the ability to perform simple, routine, repetitive tasks; no work with the public; and no tandem tasks.  She requires work in a non-fast rate production environment defined as involving no conveyor belt or assembly line work; and work involving very few changes.

(*Id.*, Tr. 20).

At Step Four, the ALJ found that Prater was unable to perform any past relevant work.  (*Id.*, Tr. 24).  At Step Five, the ALJ determined, based in part on testimony provided by the VE in response to hypothetical questions, that Prater was capable of performing the jobs of [scrap] sorter (200,000 jobs nationally) and

inspector (200,000 jobs nationally). (*Id.*, Tr. 25). As a result, the ALJ concluded that Prater was not disabled under the Act. (*Id.*).

## IV. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.' " *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...."). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

10

Although the substantial evidence standard is deferential, it is not trivial. The Court must " 'take into account whatever in the record fairly detracts from [the] weight' " of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (internal quotations omitted).  Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Rabbers*, 582 F.3d at 651 (internal quotations omitted).

## V.    Analysis

Prater presents a single argument in seeking summary judgment.  She argues that the ALJ violated the treating physician rule by not giving the December 2017 Evaluation controlling weight and therefore the case should be remanded for additional findings or she be awarded benefits.  The Evaluation only spoke to Prater's mental impairments, and Prater does not challenge the ALJ's findings as to any physical impairments.  As noted above, the Court assumes that that the Evaluation was authored by treating psychiatrist Sharon Ruth Nassar, Ph.D., even

11

though, as the ALJ determined, the opinion was undated and unsigned, completed

by "an unidentified therapist from Triad Counseling Center."  (ECF No. 11, Tr.

23).  The ALJ explained:

> The therapist noted moderate limitations in maintaining social
> functions, and activities of daily living; and moderately-severe
> limitations in concentration, persistence, or pace as well as in repeated
> episodes of deterioration or decompensation.  Moderate to severe
> difficulties were also noted in her ability to perform basic work
> activities, on a sustained basis in a routine competitive work setting . .
> . This assessment is given no weight because it is from an unknown
> source and it is inconsistent with the record prior to September 30,
> 2015, the date last insured.

(*Id*.).

In evaluating medical opinion evidence, an ALJ will give the medical

opinion of a claimant's treating physician controlling weight as long as it "is well-

supported by medically acceptable clinical and laboratory diagnostic techniques

and is not inconsistent with the other substantial evidence" in the record (the

"treating physician rule").  20 C.F.R. § 404.1527(c)(2)[4]; *see Wilson v. Comm'r of

Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  While controlling weight may be

given to medical opinion evidence such as "the nature and severity of an

individual's impairment(s)," controlling weight may not be given to

"administrative findings that are dispositive of a case"—for example, what an

---

[4] This rule only applies to claims filed before March 27, 2017.  For claims filed on
or after March 27, 2017, 20 C.F.R. § 404.1520c applies instead.

individual's residual functional capacity is or whether an individual is disabled. Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *2 (July 2, 1996); 20 C.F.R. § 404.1527(d); *see also Warner*, 375 F.3d at 390 ("The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician." (alterations adopted) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985))). Furthermore, controlling weight may not be given to an opinion "unless it also is 'not inconsistent' with the other substantial evidence in the case record." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *1 (July 2, 1996).

If the ALJ decides not to give the treating physician's medical opinion controlling weight, she must determine what weight to give it by looking at "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley*, 581 F.3d at 406; 20 C.F.R. § 404.1527(c)(2)(i)–(ii), (3)–(6). The ALJ is required to "always give good reasons in [the] notice of determination or decision for the weight" of the "treating source's medical opinion" (the "good reasons requirement."). 20 C.F.R. § 404.1527(c)(2); *see also* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996) ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). These reasons must be specific in order to "make clear to any

13

subsequent reviewers the weight the adjudicator gave to the treating source's

medical opinion and the reasons for that weight."  Soc. Sec. Rul. 96-2p, 1996 WL

374188, at *5 (July 2, 1996).

In declining to give controlling weight to the information on the Evaluation,

as set forth above, the ALJ noted that Prater's mood became more stable and her

stress and anxiety levels reduced as she progressed through therapy in 2014.  (ECF

No. 11, Tr. 21-22).  The ALJ further referenced Prater's medications being

effective, despite occasional non-compliance, that Prater was positive and

agreeable during sessions, that she was consistently doing "pretty good" and had

decreased depression, and that she handled her miscarriage and troubles with her

ex-husband well.  (*Id*., Tr. 22).  The ALJ also referenced that Prater's concerns

over others judging her were fleeting, that she could process and control her

intrusive thoughts, and that her GAF scores throughout 2014 and 2015 treatments

up to the date last insured measured consistently in the high 50s to 60s, noting that

this indicates only mild symptoms.  (*Id*., Tr. 22-23).  Further, as the Commissioner

notes, the "moderately-severe" and "severe" findings on the Evaluation do not

coincide with the moderate, "moderate-to-mild," and mild findings in the medical

record.  *See, e.g., supra* Section II.B.  Reading the ALJ's opinion as a whole, the

Court concludes that the ALJ was supported by substantial evidence in declining to

give the Evaluation controlling weight, due to its inconsistencies with the medical record of Prater's office visits.

Upon declining controlling weight to an opinion, the ALJ must still consider the opinion and give "good reasons," such as those outlined at 20 C.F.R. § 404.1527(c)(2)(i)–(ii), (3)–(6), for its weight.  Here, the ALJ gave the opinion no weight at all, due to its inconsistency with the record and the source of the opinion being unknown.  (ECF No. 11, Tr. 23).  Prater argues that the medical record reflects symptoms of her being easily overwhelmed and suspicious, suffering from a decrease in energy, poor concentration, impulsivity, social avoidance, anxiety, delusional thoughts, and increased paranoia.  (ECF No. 13, PageID.413-414). Though not inaccurate, this summation ignores that Prater made positive progress toward her goals in the vast majority of her biweekly sessions, that her symptoms consistently improved from moderate to mild in severity or disappearing altogether, and that she was rarely found to have "moderately-severe" or severe symptoms.  *See, e.g., supra* Section II.B.  Additionally, while Prater notes an increase in paranoia after the birth of her daughter, the records reflect that she had been weaned off of her medications during periods of pregnancy, and that returning to medications tended to alleviate her symptoms.  *Id*.

Prater also argues that the opinion is supported by her hearing testimony, during which she testified that her distractibility, paranoia, and lack of punctuality

15

caused by forgetting her schedule made her unable to hold a job.  (ECF No. 11, Tr. 33-35).  But the ALJ found Prater's testimony "not entirely consistent" with the evidence, a finding that Prater does not directly challenge.  (*Id.*, Tr. 21).  The ALJ found Prater's statements to be inconsistent, as her attested daily activities were not as limited as one would expect, given her complaints.  (*Id.*, Tr. 23).  He found that her ability to complete household chores, shop, care for her children, and maintain a social life undercut her claims regarding the severity of her limitations.  (*Id.*).  He also noted that her periods of non-compliance with prescribed medications suggested that her symptoms may not have been as limiting as suggested.  (*Id.*, citing Tr. 243, 305).  Given Prater's lack of rebuttal to the ALJ's subjective symptom evaluation, the Court finds that the ALJ did not err in discounting Prater's testimony.  *See* 20 C.F.R. § 404.1529.  Her testimony thus lends little support for the Evaluation.

Although the ALJ understandably, but perhaps mistakenly, discounted the Evaluation due to its unknown origin, any mistake does not require reversal or remand.  First, it is well-established that opinions from unknown sources are disqualified as having treating source status under § 404.1527.  *Spradlin v. Colvin*, No. 0:13-CV-90-EBA, 2015 WL 226031, at *4 (E.D. Ky. Jan. 16, 2015) ("This treating physician rule cannot be applied here because the Plaintiff has failed to establish that such a relationship exists.  The portions of the record to

which the Plaintiff directs the court do not include the name of a physician, or any information as to the length, frequency, or duration of treatment received by a treating physician."). Moreover, the ALJ's statement that Evaluation is inconsistent with the medical record, directly preceded by a summary of the record that supports this conclusion, qualifies as a "specific reason" required to discount the opinion's weight. *Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir. 2006). Thus, for the reasons summarized above and by the ALJ, substantial evidence supports the ALJ's conclusion that the opinion is inconsistent with the medical record. Further, the lion's share of the Evaluation by Dr. Nassar is delivered as a "checkbox opinion," with circles drawn around corresponding levels of symptom severity or limitation but no explanations given for the ratings. (ECF No. 14, PageID.426). As the Commissioner points out, such opinions constitute "weak evidence at best." *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474 (6th Cir. 2016) (quoting *Mason v. Shalala,* 994 F.2d 1058, 1065 (3d Cir. 1993)). "Many courts have cast doubt on the usefulness of these forms and agree that administrative law judges may properly give little weight to a treating physician's 'check-off form' of functional limitations that 'did not cite clinical test results, observations, or other objective findings....' *Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 566 (6th Cir. 2016) (quoting *Teague v. Astrue,* 638 F.3d 611, 616 (8th Cir. 2011)); *see also Smith v. Comm'r of Soc. Sec.*, No. 13-12759, 2015 WL

17

899207, at *15 (E.D. Mich. Mar. 3, 2015) (citing cases); *Ashley v. Comm'r of Soc. Sec.,* No. 1:12–cv–1287, 2014 WL 1052357, at *8 n. 6 (W.D. Mich. Mar. 19, 2014) (citing cases).  Though the ALJ did not specifically mention the form of the Evaluation in giving it no weight, his failure to do so is harmless error, as opinions in this form are "patently deficient."  *See Hernandez*, 644 F. App'x at 475 (6th Cir. 2016) (finding harmless error where the ALJ did not give good reasons for not abiding by the treating physician rule regarding a physician's check-box analysis that was unaccompanied by any explanation).

In sum, even considered as a treating source opinion, the short written portion of the Evaluation contains no explanation or support for the severity of Prater's symptoms, only a diagnosis, list of medications, and dates of treatment. (ECF No. 11, Tr. 356).  This too is inadequate, as a mere diagnosis "says nothing about the severity of the condition."  *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).  The Evaluation also failed to state what Prater "can still de despite [her] impairment(s)," as required under § 404.1527(a).  Thus, assuming that the Evaluation was authored by Dr. Nassar, the ALJ still gave good reasons for assigning it no weight.  Additionally, any error in the ALJ's analysis would be harmless, as the opinion in the Evaluation is deficient.

VI.    Conclusion

18

For the reasons set forth above, it is RECOMMENDED that the

Commissioner's motion be GRANTED, Prater's motion be DENIED, and that

under sentence four of 42 U.S.C. § 405(g), the Commissioner's decision be

AFFIRMED, in accordance with this opinion.

Dated: December 30, 2020                       s/Kimberly G. Altman
Detroit, Michigan                              KIMBERLY G. ALTMAN
                                               United States Magistrate Judge

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation.  Any objections must be filed within 14 days of service, as

provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).

Failure to file specific objections constitutes a waiver of any further right of

appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation. *Willis v. Sec'y of Health &*

*Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," etc. Any objection must recite precisely the provision of this Report and

19

Recommendation to which it pertains. Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d). The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc.  If the Court determines that any objections are without

merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of
record and any unrepresented parties via the Court's ECF System to their
respective email or First Class U.S. mail addresses disclosed on the Notice of
Electronic Filing on December 30, 2020.

<span style="padding-left:200px;">s/Marie E. Verlinde</span>
<span style="padding-left:200px;">MARIE E. VERLINDE</span>
<span style="padding-left:200px;">Case Manager</span>